IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON BARTO,<br>    Plaintiff,<br><br> vs.<br><br>WESTMORELAND COUNTY; JOHN R. WALTON, WARDEN, Westmoreland County Prison, in his official and individual capacity; STEVE CMAR, DEPUTY OF SECURITY, Westmoreland County Prison, in his official and individual capacity; SGT. RICHARD PLANEY, in his official and individual capacity; CORRECTIONS OFFICER JOHN DOE, in his official and individual capacity; SGT. BILLHIMER, in his official and individual capacity; NAPHCARE, INC.; ROBERT McGRATH, MD., in his official capacity as Physician's Assistant, and individually; WILLIAM NICHOLSON, in his official capacity as Health Services Administrator, and individually LORI LENTZ, in her official capacity as Administrative Assistance, and individually; CYNTHIA SNYDER-WILTRAUT, in her official capacity as a nurse, and individually; MARK KNAPIC, in his official capacity as a nurse, and individually,<br>    Defendants. | Civil Action No. 09-966<br>Judge Fischer<br>Judge Bissoon |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

  Plaintiff, Aaron Barto ("Barto"), has brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right against cruel and unusual punishment while he was incarcerated at the Westmoreland County Prison ("the Prison"). Plaintiff, who is a diabetic, contends that Defendants deprived him of his insulin pump on three

different occasions thereby demonstrating deliberate indifference to his health condition and medical needs. Pending before the Court are three motions for summary judgment. [ECF Nos. 58, 62, 66]. For the reasons that follow, it is respectfully recommended that the motions be granted and that judgment be entered in favor of all Defendants.

II.     REPORT

        A.      Factual and Procedural Background

It is undisputed that Barto was incarcerated at the Prison between August 26, 2008, and February 11, 2009. [ECF 45, ¶ 59]. It also appears undisputed that sometime in mid-October Barto's insulin pump was taken from him for approximately ten days. [ECF 45, ¶ 35]. Although the insulin pump was returned to Barto at the end of October, it appears that it was again confiscated at the end of November, 2008, for approximately three weeks or until December 15, 2008. [ECF 45, ¶¶ 42, 44-47]. Barto continued to use the pump until January 6, 2009, when it was removed from his possession for a third time. [ECF 45, ¶ 54-56]. Barto alleges that during the three intervals that he was without his pump his blood sugar levels rose to dangerously high levels causing him to suffer seizures and that, as a result of the seizures, he suffered other physical injuries. [ECF 45, ¶¶ 36-38, 45-51, 56-57].

Barto was released from the Prison on February 11, 2009, and filed a complaint in this Court on July 23, 2009. [ECF No. 1]. An amended complaint was filed on November 13, 2009, and, on March 17, 2010,[1] a second Amended Complaint was filed wherein Barto has brought two

---

[1] Although Barto and Defendants refer to the operative complaint as being filed on March 15, 2010, the Amended Complaint submitted on that date in conjunction with Plaintiff's motion seeking leave to amend, was not filed until March 17, 2010, after the Clerk was ordered to do so. See ECF Nos. 42, 44, 45.

claims against Defendants pursuant to § 1983.[2] Specifically, Barto alleges that Defendants violated his Eighth Amendment right against cruel and unusual punishment by failing to provide him with proper medical care (Count I), and for inflicting wanton and unnecessary pain (Count II). Motions for summary judgment have been filed by Defendants and are now ripe for review.

B.   Standard of Review

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

---

[2] 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or Territory . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the person injured in an action at state law, suit in equity, or other proper proceeding for redress."

C. Discussion

Three motions for summary judgment are before the Court: a motion for summary judgment submitted on behalf of Westmoreland County and NaphCare, Inc. [ECF No. 58]; a partial motion for summary judgment submitted on behalf of the individual defendants [ECF No. 62]; and a motion for summary judgment submitted on behalf of Defendants John R. Walton, Warden ("Walton"), Steve Cmar, Deputy of Security ("Cmar"), Sgt. Richard Planey ("Planey"), and Sgt. Billheimer ("Billheimer") [ECF No. 66]. They will be addresses *seriatim*.

1. Motion by Westmoreland County and NaphCare

Westmoreland County and NaphCare argue that summary judgment should be entered in their favor because Barto is unable to demonstrate that they acted with deliberate indifference to his medical needs or that they acted pursuant to a custom or policy.

"The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), quoting Helling v. McKinney, 509 U.S. 25, 32 (1993). The Supreme Court also has held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id. Thus, in order to establish an Eighth Amendment violation, Plaintiff must demonstrate: (1) that Defendants were deliberately indifferent to his medical needs; and (2) that his medical needs were serious. Rouse, 182 F.3d at 197. See Spruill v. Gillis,

372 F.3d 218, 235 (3d Cir. 2004). Because Defendants do not dispute that the treatment of an insulin dependent diabetic is a serious medical need, the only question at issue is whether Defendants acted with deliberate indifference to that need.

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991). Allegations of negligence or medical malpractice are not sufficient to establish a Constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . . ." Rouse v. Plantier, 182 F.3d at 197, quoting Estelle, 429 U.S. at 105. See Spruill, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable).

Here, Defendants argue that Barto is unable to establish deliberate indifference because, according to his own testimony, his blood sugar was tested and he was given insulin regularly notwithstanding the fact that he did not have an insulin pump. Indeed, Plaintiff testified at his February 24, 2010 deposition that after his pump was taken away, his blood sugar was monitored four times a day and he was given insulin at breakfast, lunch and dinner and, when warranted, he received a fourth shot at night. [ECF No. 61-1, p. 3]. Plaintiff further testified on July 13, 2010, that "medical" was instructed to give him insulin on a sliding scale based on his blood levels; that he would go to the medical unit for his "finger sticks" at which time they would administer the insulin to him; and that, at some point, they started giving him an additional shot at night in order to regulate his blood levels throughout the night. [ECF No. 61-2, pp. 2-4]. Plaintiff also

5

stated that he never went 24 hours without having his blood levels checked. [ECF No. 61-2, p. 4]. Thus, regardless of the method by which Barto was given insulin it appears clear that Defendants monitored his condition and provided him with medical treatment. Under these circumstances, no reasonable jury could find that Defendants were deliberately indifferent to Barto's medical needs.[3]

Barto nevertheless complains that Defendants' deliberate indifference is evidenced by the fact that they either gave him too much or too little insulin and did not take into consideration that eating would change his blood levels. Barto's complaints, however, even if proven, amount to nothing more than allegations of medical malpractice or a disagreement regarding the appropriate treatment and do not suffice to show that Defendants inflicted pain unnecessarily and wantonly. Estelle, 429 U.S. at 103-04; Rouse, 182 F.3d at 197. Plaintiff appears to acknowledge as much having categorized Defendants' conduct in the Amended Complaint as "tantamount to medical negligence" and not within the "accepted standard of medical care." [ECF No. 45, ¶¶ 1, 65, 110]. Moreover, in his present brief, Barto allows that it simply would have been the "better practice" to provide him with an insulin pump. [ECF No. 72, p. 8]. Whether or not there may have been a better or more acceptable form of treatment, however, merely may give rise to a malpractice claim[4] and does not rise to an Eighth Amendment violation.

---

[3] Although Barto attempts to create a material issue of fact by pointing to his medical records which seemingly show that he was not given regular shots of insulin, his own testimony was that he received insulin shots three or four times a day. Moreover, Plaintiff has not alleged in the Complaint that Defendants failed to provide him with insulin; rather he complains only that he was deprived of acceptable standard of care because the insulin was not administered through his insulin pump which, according to Barto, would have been more therapeutic. [ECF No. 45].

[4] This Court takes no position on whether Plaintiff has presented a viable claim of medical malpractice.

To the extent that Barto has alleged that Defendants were deliberately indifferent to his medical needs because they removed his insulin pump knowing that he suffered seizures, his claim must also fail. The fact that Barto may have been without an insulin pump at times does not negate the fact that he was treated and provided with insulin on a regular basis. Moreover, the record shows that because of his seizures Barto was placed in observation cell for his own protection and safety and that he was not confined to the cell but was free to roam around the unit. [ECF No. 69-5, pp. 7-9].[5] Indeed, Barto himself testified that Planey, as well as at least five members of the medical staff, told him that he was placed in a camera cell so that he could be monitored more closely. [ECF No. 69-1, pp. 9-10]. Under these circumstances, it cannot be said that Defendants were deliberately indifference to Barto's medical needs and Barto has not offered any evidence to the contrary.

Even if Plaintiff was able to show that Defendants were deliberately indifference to his medical needs by depriving him of his insulin pump he nevertheless is unable to show that Defendants were acting pursuant to a custom or policy.

A municipality may not be held liable under § 1983 merely because its employees have acted unconstitutionally. Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation. Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997). See Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 690-91 (1978). Similarly, "[t]o establish liability regarding a private corporation, the plaintiff must show that the corporation, 'with deliberate indifference to the consequences, established and maintained a

---

[5] The record shows also that when Barto arrived at the Prison "medical" placed him the G and H Units of the Prison where the medical personnel are assigned because his insulin pump had a needle in it thereby precluding him from being housed in the general population. [ECF No. 69-5, pp. 4-5].

policy, practice or custom which directly caused [plaintiff's] constitutional harm.'" Winslow v. Prison Health Services, Inc., 2010 WL 571766 at *5 (M.D. Pa. Feb. 12, 2010), aff'd, 2011WL 167280 (3d Cir. Jan. 20, 2011), quoting Miller v. City of Philadelphia, 1996 WL 683827 at *3-4 (E.D. Pa. Nov. 25, 1996). See Monell, 436 U.S. at 694-95.

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Commissioners of Bryan County, 520 U.S. at 403-04 (citations omitted). Liability based upon an unlawful custom will be found "where relevant policy makers within the municipal unit had notice or knowledge of a risk of deprivation of rights through a pattern of prior deprivations and acted with 'deliberate indifference' to the known risk." Bastile v. Elizabethtown Area School District, 61 F. Supp. 2d 392, 405-06 (E.D. Pa. 1999), citing Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

Barto alleges that the Prison and NaphCare had a policy of being deliberately indifferent to inmates' medical needs as evidenced by the contract they entered into whereby the prison recovers monies not spent on inmate medical care and that the Prison, therefore, had an incentive not to provide care. Under the terms of the contract, NaphCare agreed to provide certain services "in accordance with NaphCare's Proposal." [ECF No. 61-4, p.2]. The Proposal is attached to the contract as Appendix A and, in relevant part, provides that:

> NaphCare proposes a shared risk savings pool for fluctuating medical costs of two hundred fifty thousand ($250,000.00) per year. The will cover costs associated with off-site medical expenses such as hospitalizations, emergency-room visits, specialty-care clinics, ambulance transportations, laboratory services….

8

Money not spent in the pool will be refunded back to the County at a rate of $90.00 for every $100,00 or ninety percent (90%). Ten percent (10%) will go to NaphCare for administrative costs.

[ECF No. 61-4, p. 12].

Under these terms, it appears clear that NaphCare is responsible for paying up to $250,000.00 per year for treatment rendered by third-party providers outside the Prison and that the County is only refunded monies not spent from that $250,000.00 pool. Indeed, Walton testified at his deposition that the provision only applies to treatment by third-party medical providers for services rendered outside the Prison. [EFC No. 61-3, p. 3].[6] Because Plaintiff's insulin was administered at the Prison and not off-cite by a third-party provider, the portion of the contract upon which Plaintiff relies is inapplicable and cannot serve as the policy pursuant to which Defendants were acting when they confiscated Barto's insulin pump.

To the extent that Barto suggests that other civil rights cases filed against Westmoreland County in which Eighth Amendment claims have been raised evidences a custom of withholding medical care and establishes that the Prison was on notice that the medical care it provides is deficient, his claim is equally without merit. [ECF No. 45, ¶¶ 3, 99, 101, 102]. Barto cites only two cases to support his position, neither of which involved the treatment of diabetes or a defendant's failure to provide the Plaintiff with an insulin pump. See Roupe v. County of Westmoreland, C.A. No. 05-949 (W.D. Pa. 2005) (claiming defendants failed to comply with accepted standards of medical treatment for plaintiff's various liver diseases); Barger v. Walton, C.A. No. 06-1620 (W.D. Pa. 2006) (claiming that plaintiff was denied medical treatment for a

---

[6] In addition, the provision of the contract which memorializes the cited portion of the Proposal is entitled "Hospital Care" and describes NaphCare's responsibilities when an inmate requires hospitalization. [ECF No. 61-4, p. 3].

9

sprained ankle, a staph infection and hemorrhoids). Moreover, not only was NaphCare not a defendant in Roupe, but the case ultimately was dismissed with prejudice after plaintiff's counsel took no action to finalize the settlement that had been reached; Barger's case was dismissed without reaching the merits. These cases, therefore, do not provide the basis for finding that Defendants had a practice or custom of withholding medical care for insulin dependent inmates.[7]

2. Motion by Individual Defendants

The individual Defendants, Walton, Cmar, Planey, Billheimer, Robert McGrath, M.D., Michael Kusma, P.A., William Nicholson, Lori Lentz, Cynthia Snyder-Wiltraut, and Mark Knapic, have filed a motion for partial summary judgment arguing that, to the extent they have been sued in their official capacities, the claims brought against them are subject to summary judgment for the same reasons that Barto is unable to proceed against the County and NaphCare.

It is well settled that § 1983 claims brought against a municipal employee in his or her official capacity is the equivalent of bringing an action against the government entity itself. Smith v. School District of Philadelphia, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000), citing Hafer v. Melo, 502 U.S. 21, 25 (1991). See Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988), citing Monell, 436 U.S. at 690 n.55 (official capacity suits are duplicative of the claims against the municipality and "generally represent only another way of pleading an action against an entity of which an officer is an agent . . .").

Because the Court already has determined that Barto is unable to establish his claims against the County and NaphCare, it follows that he is also unable to establish in his claims

---

[7] Having found that Plaintiff is unable to demonstrate that Defendants were deliberately indifferent to his medical condition or that they were acting pursuant to a custom or policy, the Court need not, and has not, addressed Barto's claims that he lost certain privileges as a result of Defendants' custom and policy of deliberate indifference to inmates' medical needs.

against the individual Defendants in their official capacities. As such, to the extent that Plaintiff seeks to hold the individual Defendants liable for the alleged constitutional deprivations in their official capacities, they are entitled to summary judgment as well.

3. Motion by Defendants Walton, Cmar, Planey and Billheimer

Finally, Defendants Walton, Cmar, Planey, and Billheimer, have filed a motion seeking summary judgment in their favor to the extent they have been sued in their individual capacities arguing that, because the record evidence shows that they had no personal involvement in the confiscation of Barto's insulin pump, they cannot be held liable under the Eighth Amendment.

While the Court agrees with Defendants, it also is apparent that the absence of any evidence that Defendants were deliberately indifferent to Barto's medical condition precludes a finding of liability in any capacity. As previously discussed, a deprivation of medical treatment violates the Eighth Amendment's prohibition against cruel and unusual punishment only where, *inter alia*, it demonstrates a deliberate indifference to the prisoner's serious medical needs. Estelle, 429 U.S. at 103-04; Spruill, 372 F.3d at 235. Having determined that the record is devoid of evidence to support Barto's claims of deliberate indifference, it would appear that all of the Defendants -- including the individual medical Defendants -- are entitled to summary judgment on Barto's claims notwithstanding whether they were personally involved in the confiscation of his insulin pump. Id.

Moreover, it is noteworthy that none of the moving Defendants are doctors or medical personnel. The Court of Appeals for the Third Circuit has held that where an inmate is being treated by the prison medical staff, non-medical prison officials "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" absent evidence that they

11

had reason to believe that the medical staff was either mistreating a prisoner or not treating him at all. Spruill, 372 F.3d at 236. Given that Barto's blood levels were checked three to four times a day and that he received insulin shots three or four times a day, no reasonable fact finder could conclude that Walton, Cmar, Planey or Billheimer had reason to believe that Barto was not being treated or that he was being mistreated by the medical personnel. Thus, even if Defendants participated in the confiscation of Barto's insulin pump and were aware of his seizures, these facts do not suffice to establish that they were deliberately indifferent to his medical needs. Id. See Thomas v. Dragovich, 142 Fed. Appx. 33, 37 (3d Cir. 2005).

It is also apparent, as Defendants have argued, that Barto is unable to point to sufficient evidence from which a fact finder could reasonably conclude that the moving Defendants had the requisite level of involvement in the alleged wrongdoing. It is well settled that local government officials cannot be held liable under a theory of respondeat superior or vicarious liability. Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); Davis v. Carroll, 390 F. Supp. 2d 415, 420 (D. Del. 2005). See Monell, 436 U.S. at 691. Rather, liability must be predicated on personal involvement in the alleged wrongdoing which may be demonstrated "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (finding that in order to impose supervisory liability on a prison official accused of violating the Eighth Amendment's proscription against inhumane conditions of confinement, the official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Barto contends that Walton "either knew or should have known" about his diabetic seizures and the confiscation of his insulin pump because he was briefed daily by William Nicholson, NaphCare's Health Care Administrator at the Prison, about medical issues. See [ECF No. 80-1, pp. 3-4, 6]. Although Nicholson testified that he had daily communications with the Warden, his testimony falls short of establishing that he and Walton spoke about Barto's condition or his seizures. Moreover, even if Barto was the subject of conversation, Barto has not pointed to any evidence that would show that the discussions evidence actual knowledge that a substantial risk of serious harm existed or that Walton acquiesced in the complained of conduct.

With respect to Cmar, Barto alleges in the Amended Complaint that Cmar threatened to throw him in "the hole" if he continued to have seizures, and cites to his own deposition testimony taken on February 24, 2010, as providing the factual support for his claim. See [ECF No. 45, ¶¶ 78-80; ECF No. 80-3]. Barto's testimony, however, was only that Cmar accused him of having seizures on purpose and not that Cmar threatened to place him in disciplinary confinement. [ECF No. 80-3]. The record, therefore, is not only devoid of any evidence to support Barto's allegation but, even if Cmar had threatened him with disciplinary confinement, there is no evidence that Barto was ever transferred. As pointed out by Defendants, because Barto is required to demonstrate that Cmar's conduct deprived him of a right secured by the Constitution or laws of the United States in order to succeed on a § 1983 claim, "[a]llegations of verbal abuse, threats, or harassment generally are not actionable under Section 1983." Langella v. Cercone, 2010 WL 2402940 at * 9 (W.D. Pa. June 10, 2010), citing Burkholder v. Newton, 116 Fed. Appx. 358, 360 (3d Cir. 2004). See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). Thus, the fact that

13

Cmar may have threatened Barto with disciplinary custody, without more, is insufficient to permit a reasonable jury to find that Cmar deprived him of a right secured by the Constitution and Cmar, therefore, is entitled to summary judgment.

Barto also has alleged in the Complaint that Planey is somehow liable to him because Planey participated in confiscating his insulin pump on two occasions and because Planey placed him in a suicide watch cell. [ECF No. 45, ¶¶ 35, 52, 55]. Defendants have moved for summary judgment arguing that there is no evidence of record to refute Planey's testimony that he never participated in removing Barto's insulin pump and that Barto was never placed on "suicide watch," but was merely placed in a camera cell out of concern for his own safety in light of his seizures. [ECF No. 69-5, pp. 5-9]. Because Barto has not addressed Defendants' arguments in this regard nor offered any evidence which would create an issue for trial, the claims against Planey are subject to summary judgment as well.

With respect to Billheimer, Barto has alleged in the Amended Complaint that Billheimer "assisted in removing [his] insulin pump" when it was confiscated in November of 2008 -- an allegation that Billheimer denies. See [ECF No. 69-6, p. 5]. The only evidence that Barto has pointed to support his assertion is his own deposition testimony, taken on February 24, 2010, in which he agreed that paragraph 35 of the original complaint states that Billheimer took his pump away on or about Thanksgiving 2008. [ECF No. 80-3, p. 5-6]. Recitation of an allegation he made in an earlier complaint, however, does not provide the factual basis to support the instant claim. [ECF No. 45, ¶ 44]. Moreover, Barto also alleged in the Amended Complaint that it was Defendant Mike Kusma, a physician's assistant employed by NaphCare, who directed that the pump be removed at the time and that Kusma instructed Defendant Nurse Cindy Wiltrout to

14

actually remove it. [ECF No. 45, ¶ 44]. The record is, therefore, devoid of any evidence from which a fact finder could conclude that Billheimer assisted in removing Barto's insulin pump in November of 2008.

Barto also points to pages 36-37 of his deposition testimony in which he testified that Billheimer was present when his pump was removed in January of 2009. [ECF No. 80-3, pp. 3-4]. Not only is Barto's belated allegation noticeably absent from the Amended Complaint, but he testified only that Billheimer was "present" because he was the supervisor on duty and not that he actually participated in removing the pump. [ECF No. 80-3, p. 4]. Indeed, Barto has alleged in the Amended Complaint alternatively that "Sergeant Planey directed that Mr. Barto's insulin pump be confiscated for the third time" and that "William Nicholson and Mike Kusma directed these removals." [ECF 45, ¶¶ 55, 62]. Because, at best, the evidence shows only that Billheimer may have been present when the medical staff removed Barto's insulin pump from him in January of 2009, and because the record is otherwise devoid of any evidence that Billheimer had reason to believe that the medical staff was mistreating Barto, no reasonable jury could conclude that Billheimer was either personally involved in the events at issue or that he was deliberately indifferent to Barto's medical needs. [ECF No. 69-6, p. 4]. Accordingly, Billheimer is entitled to summary judgment as well.

D. Conclusion

For the foregoing reasons, is respectfully submitted that the motion for summary judgment submitted on behalf of Westmoreland County and NaphCare, Inc. [ECF No. 58] be granted; the partial motion for summary judgment submitted on behalf of the individual Defendants [ECF No. 62] be granted; and the motion for summary judgment submitted on behalf of Defendants Walton, Cmar, Planey and Billheimer [ECF No. 66] be granted.

In addition, although not specifically argued by Defendants, the absence of evidence that Defendants were deliberately indifference to Barto's medical needs also entitles the medical Defendants to summary judgment in their individual capacities.[8]

In accordance with the Magistrate Judges Act, 28 U.S.C. ' 636(b)(1)(B) & (C), and Local Rule 72.D.2 B, the parties may file written objections to this Report and Recommendation on or before February 14, 2011. Failure to timely file objections may constitute a waiver of any appellate rights. Any party opposing objections may file their response to the objections on or before February in accordance with Local Civil Rule 72.D.2.

                                                      Respectfully submitted,

                                                      /s/ Cathy Bissoon
                                                      United States Magistrate Judge

---

[8] A district court has the inherent authority to grant summary judgment *sua sponte* so long as the party opposing summary judgment has notice and an opportunity to be heard concerning the proposed basis for the *sua sponte* grant of summary judgment. Canell v. Bradshaw, 97 F.3d 1458, at *5 (Table, Text available in Westlaw) (9th Cir. Sept. 25, 1996) (unpublished). See Celotex Corp. v. Catrett, 477 U.S. at 326 ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). Because the issue of deliberate indifference was raised by the other Defendants in this case and has been addressed by Barto in his responsive briefs, he has not only been placed on notice but has had the opportunity to respond. Moreover, this Report and Recommendation also serves as the necessary notice and gives Barto the opportunity to be heard by filing objections. Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998).

Dated: 27 January, 2011

cc: The Honorable Nora Barry Fischer
United States District Judge

The Honorable Cathy Bissoon
United States Magistrate Judge

All counsel of record by Notice of Electronic Filing